IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:18-CR-007 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| v. | ) | |
| | ) | **GOVERNMENT'S SENTENCING** |
| MARK KOLTZ, | ) | **MEMORANDUM** |
| | | |
| Defendant. | | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Tracey Ballard Tangeman, Assistant U.S. Attorney, and submits this Sentencing Memorandum.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio

By:  /s/ Tracey Ballard Tangeman
Assistant U.S. Attorney
Atty Regis. No. 0069495
Four Seagate, 433 N. Summit St.
Toledo, Ohio 43604
Tel. No. (419) 259-6376
Fax No. (419) 259-6370
Tracey.Tangeman@usdoj.gov

**MEMORANDUM**

    **I.**    **The U.S.S.G. § 2G2.2 enhancements that Defendant objects to are both factually applicable and legally supported under controlling case law.**

Defendant objects to the factually applicable U.S.S.G. § 2G2.2 enhancements involving prepubescent minors, use of computer, and number of images, making essentially a claim of double counting or frequency of the enhancements and citing a finding by Judge Zouhary in another child pornography case that these enhancements are inherent in the crime itself. (PSR, Doc. 13, PageID 88). However, the Sixth Circuit and Northern District of Ohio have previously rejected this 'double counting' or frequency claim to the enhancements. *United States v. Walters*, 775 F.3d 778, 785-786 (6th Cir. 2015) (regarding use of computer, distribution, and sadistic/violent image enhancements); *United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir.2003) (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir.1999)) (Double counting occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.).[1]

The Sentencing Commission not only acknowledged the frequency rates of § 2G2.2 enhancements since the advent of digital technology, it took them into account when setting the base offense levels in § 2G2.2 and did so only after extensive analysis of a number of empirical studies regarding the Guidelines as well as a proportionality review. *Cunningham, supra*, at 849-51, citing "The History of the Child Pornography Guidelines," (hereinafter "History") at 41-46, available at www.ussc.gov/general/ 20091030_History_Child_Pornography_Guidelines.pdf. That is why the base offense levels carry sentencing ranges well <u>below</u> the mandatory minimum

---

[1] Even if double counting did occur, it is permissible when it "appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Farrow, supra,* at 194. Double counting does not rise to the level of a constitutional violation. *Wheeler, supra,* at 413; *Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

of 60 months for receipt and/or distribution of child pornography. *Cunningham, supra,* at 851.[2] Even the Federal Defender's Office agreed doing so was appropriate. *Id.* at 850, citing History, at 47. The Sentencing Commission chose the "most lenient option" of those "typically used by the Commission" when setting the offense levels in 2G2.2. *Id.* at 850. As the court in *Cunningham* noted, by setting the base offense level at 22 for child pornography traffickers and distributors, "the Commission sought to preserve proportionality, avoid double counting," "provide a wider sentence range for defendants than would be otherwise available," and "permit the Guidelines and enhancements to operate in conjunction with the statutory mandatory minimum." *Id.* at 851 (full citation omitted). Thus, Defendant's argument that 2G2.2 fails to account for the enhancements' frequency lacks merit.

Even if frequency had not been taken into account, "the fact that certain enhancements apply on a frequent basis does not serve as a basis for negating the Guidelines" and failing to apply otherwise legally applicable enhancements. *Id.* at 852. When addressing the same attacks on use of computer and number of images enhancements, the *Cunningham* court aptly stated:

> "But that number of images is not collected by accident. Instead, those images are sought out by a troubled mind, from like-minded individuals. Thus, a defendant makes a cognitive choice to seek out that level of images. The Court has never before seen an argument that because a crime is easy to commit, it should be punished less severely. Robbery is certainly simplified from the criminal's perspective by the use of a firearm and the choice of a feeble, elderly victim. The Guidelines however, do not lessen the punishment because the crime was easier to commit. In fact, seeking out a vulnerable victim leads to a 2-level enhancement under the Guidelines." *Id.* at 853.

Thus, the enhancements apply even if they typically occur in child pornography cases.

---

[2] The base offense level (which does <u>not</u> factor in use of computer, number of images, sadism/violence, or prepubescent minors) is a 22, which for a Criminal History Category I like Defendant, carries 41-51 months—below the mandatory minimum 60 months.

Congress and the Sentencing Commission have amended 2G2.2 several times since 1987 in the face of such frequency/double-counting claims, and they have not only kept the enhancements despite their frequency, they have continued to <u>increase</u> the penalties--consistently and sometimes dramatically--over that 30-year period.  *McNerney*, *supra*, at 776 (quoting *United States v. Dorvee*, 604 F.3d 84, 95 (2d Cir.2010); *see also*, *United States v. Grober*, 624 F.3d 592, 608 (3d Cir.2010) (Congress has placed a "laser-like focus on the child pornography Guidelines, particularly in the last several years"); *United States v. Cherry*, 487 F.3d 366, 368-369 (6th Cir.2007) ("The seriousness of the crime is reflected in the harshness with which Congress has chosen to treat it.").  The explanation is simple:  Exploitation of children is pandemic, "today's commercial child pornography is a multi-billion-dollar industry worldwide fueled by the internet," and even those who argue the current sentencing scheme is too severe admit that the increase in the number of child pornography prosecutions has far outpaced any increase in the sentencing guidelines.  *Cunningham*, *supra,* at 847-848 (quoting 2007 Congressional Testimony of Ernie Allen, then-President of the National Center for Missing and Exploited Children).  As the Supreme Court noted, "[I]t is now difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution."  *Osborne v. Ohio*, 495 U.S. 103, 110, 110 S.Ct. 1691 (1990). [3]  In this case, Defendant both received <u>and</u> distributed it.

In passing the PROTECT Act [4] in 2003, which among other things instituted mandatory minimum sentences for receipt and/or distribution of child pornography, Congress reached a

---

[3] Child pornography victims face other types of victimization separate from production and caused by the continued circulation—receipt and distribution—of the images of their abuse: depression, guilt, poor self-esteem, feelings of inferiority, interpersonal problems, delinquency, substance abuse, suicidal thoughts, and post-traumatic stress.  U.S. Sentencing Commission, Report to Congress: Federal Child Pornography Offenses (Dec. 2012) (Chapter 5 – Victims of Child Pornography) at 112-113.

[4] Prosecutorial Remedies and Other Tools to End Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-1066, 117 Stat. 650 (2003).

compromise because sentencing judges were departing downward in too many cases. One Senator explained it best:

> The epidemic of downward departures in child pornography cases has created what I like to call the "Me Too" sentencing pitch from the defense. In a recent case in Kansas, the judge departed from the Sentencing Commission's guideline sentence of 27-33 months in prison, and imposed only probation. As part of the reason for the departure, the court stated that it found defense counsel's argument compelling-that in 27.4 percent of cases involving possession of child pornography, sentencing courts have downwardly departed. In other words, the problem is so out of hand, that defense attorneys point to the downward departure statistics and say, "Me too, Judge, Me Too." That is where we are. That is what we are trying to fix." *Id.*

Thus, Congress intended to curb reduced sentences in child pornography cases even in the face of the very claims made by the defense in this case. Moreover, failure to apply the 2G2.2 enhancements risks eliminating <u>any</u> distinction among child pornography offenses and defendants, inviting that which the guidelines sought to eliminate--unwarranted sentencing disparities. *United States v. Rochon*, 318 F.Appx. 395, 398 (6th Cir. 2009) (The fundamental purpose of the guidelines is to help maintain national uniformity in sentences). Therefore, the enhancements in 2G2.2 are both factually applicable and legally supported.

    **II.    Defendant earned $19,393 in 2017 alone and thus, has a present ability to pay court-ordered financial obligations; he also has future employability since he will likely be in his 30's when he is released from prison.**

While the PSR claims Defendant lacks a present ability to pay a fine (Doc. 13, PageID 80), Defendant reported earning $19,393 from just his employment in 2017 alone, and at 27 years old, has lived with his parents his entire adult life. Thus, the Government disagrees that he lacks the ability to meet court-ordered obligations, be it a fine or additional special assessment under 18 U.S.C. § 3014.[5] Regardless, restitution is mandatory in this case under 18 U.S.C. §

---

[5] These additional special assessments, which are required under 18 U.S.C. § 3014 for child pornography offenses, are deposited in the Domestic Trafficking Victims' Fund and awarded as grants or enhanced programming for victims. 18 U.S.C. §§ 3014(c) and (e)(1).

5

3663A. 18 U.S.C. § 2259(b)(4)(B)(i).[6] Defendant also has future potential employability because while incarcerated in the custody of the Bureau of Prisons, he can participate in their Inmate Financial Responsibility Program ("IFRP"), specifically created to ensure that inmates satisfy court-ordered financial obligations;[7] and once released, which will likely be while still in his 30's, he will have decades to work and earn money.  Having said that, the Government certainly understands if the Court prefers that Defendant's present and future earnings go entirely toward mandatory restitution, particularly in light of the number of child pornography victims and restitution requests in this case.

### III. The nature, circumstances and seriousness of this case necessitate a sentence above the 60-month mandatory minimum.

A mandatory minimum 60-month sentence is not sufficient in this case, given the enormity of Defendant's cache, the fact that it depicts the worst and most abhorrent kinds of child pornography, Defendant's admissions that he had been doing it for a decade, and the fact that he masturbated to the child pornography, fantasized about acting on his urges, and admittedly thought about having sex with a child.  (PSR, Doc. 13, PageID 64-65).  Defendant had a staggering 27,682 still images and 1,306 videos of child pornography, and it included the worst of the worst:  infants and toddlers being raped every way imaginable, children being forced to engage in bestiality, and even an infant in bondage being defecated on by an adult male.  (*Id.*). This is not the kind of child pornography found in every child pornography case, nor does every child pornography defendant have such a large cache.  Even in this Digital Age, Defendant's

---

[6] "Nor may a court decline to order it due to "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4)(B)(ii).
[7] The Bureau of Prisons requires all medically fit inmates to work, it collects debt payments from the inmates' trust fund accounts and earnings from prison work assignments, and it has a pay structure with minimum payments of typically $25 per quarter.

6

cache is massive.  Likewise, Defendant admitted that he had been doing this since high school (and he is now 27), he masturbated to the images, and he had even fantasized about having sex with a child—which is not the case for every child pornography defendant.  (*Id.* at 64).  Those facts set him apart from other child pornography defendants, proving that the mandatory minimum is not sufficient.

Furthermore, Defendant worked in daycare centers for 6 years where he was surrounded by the very thing that tempted him—children.  (*Id.* at 79).  It is utterly terrifying that he admitted acting out and that he had daily access to do just that, which is precisely why the U.S. Attorney's Office, Secret Service, and Sylvania Police Department have been inundated with phone calls from the parents of children at the two daycare centers where he worked.  Those parents agonize over the uncertainty that their children, many of whom are too young to speak or recognize sexual abuse, may have been sexually abused by Defendant, even if just a momentary inappropriate touch not captured by any camera or watchful eye.  Not every child pornography defendant works around children—young children no less—for 6 years.  This too sets him apart from other child pornography defendants.

Moreover, the Government need not detail the harm Defendant inflicted by his receipt and distribution of child pornography because many of the victims have submitted powerful victim-impact statements that do just that.  Each image and video represents a separate and unique harm to the victim; and Defendant had 27,682 images and 1,306 videos in his collection, of which the National Center for Missing and Exploited Children was only able to identify 2,170 images files, 48 videos, and 118 different series; however, one series alone contained 848 files Simply put, by receiving and distributing such a massive volume, Defendant inflicted more harm than defendants with smaller collections.  That he admitted doing it since high school and is now

7

27 aggregates the harm, unlike other child pornography defendants whose criminal conduct did not span a decade.

Given that Defendant's collection is so massive and included the most abhorrent kinds of child pornography, he had been doing it for a decade, and he admitted masturbating to it and fantasizing about acting on his urges while simultaneously working with children every day, the mandatory minimum is not sufficient in this case to satisfy the sentencing principles under 18 U.S.C. § 3553(a).  The mandatory minimum should be reserved for child pornography cases that lack these egregious facts and for defendants who have inflicted less harm on less child pornography victims.

**IV.  Conclusion**

For those reasons, the government respectfully requests that the Court overrule Defendant's objections to the 2G2.2 enhancements, find that he has an ability to pay even if his monies go entirely toward restitution, and sentence him to more than the 60-month mandatory minimum.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio


By:    /s/ Tracey Ballard Tangeman
       Assistant U.S. Attorney
       Atty Regis. No. 0069495
       Four Seagate, 433 N. Summit St.
       Toledo, Ohio 43604
       Tel. No. (419) 259-6376
       Fax No. (419) 259-6370
       Tracey.Tangeman@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on September 10, 2018, copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Where filed under seal, a copy has also been emailed to defense counsel on the date of filing.

/s/ Tracey Ballard Tangeman
Tracey Ballard Tangeman
Assistant U.S. Attorney